## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Derese Alexander,

                Plaintiff,

                              Case No. 1:19-cv-2375-MLB

v.

Wal-Mart Stores East, LP,

                Defendant.

_____/

### OPINION & ORDER

For the reasons set forth below, the Court grants Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment (Dkt. 88).

## I.    Background

Plaintiff visited Walmart to purchase a sleeping bag. The store stacked sleeping bags on a shelf with a metal grid to secure them in place. (Dkt. 88-2 ¶ 6; Dkt. 101-6 ¶ 6.) The grid was supposed to withstand some force so customers could pull sleeping bags out from under it. (Dkt. 105 ¶ 20.) After Plaintiff removed a sleeping bag from the shelf, the metal grid fell on Plaintiff. (Dkt. 101-6 ¶ 4.) When Plaintiff removed the sleeping bag, she did not notice anything strange, different, peculiar, or

otherwise "not right" with the shelf or bracket.  (Dkt. 101-6 ¶ 17.)
Plaintiff did not see anything that indicated the grid or shelf was
improperly installed or secured.  (Dkt. 101-6 ¶ 26.)  Plaintiff also did not
see any loose bolts or screws on the ground after the incident.  (Dkt. 101-
6 ¶ 29.)  The incident was caught on video.[1]  (Dkt. 101-6 ¶ 20.)  Plaintiff
now sues Defendant for negligence and negligent training.   (Dkt. 1.)
Defendant moved for summary judgement, but apparently only as to
negligence arising from premises liability and any associated punitive
damages.  (Dkt. 88.)

## II.    Standard of Review

Federal Rule of Civil Procedure 56 provides that a court "shall grant
summary judgment if the movant shows that there is no genuine dispute
as to any material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the
outcome of the suit under the governing law."  *W. Grp. Nurseries, Inc. v.*

---

[1] The video only shows Plaintiff reaching for a sleeping bag and the shelf
or grid falling.  The video is too blurry to tell whether there was anything
wrong with the shelf or whether Plaintiff used unusual force when
removing the sleeping bag.   It thus has little evidentiary value at
summary judgment.

*Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).  Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*,

477 U.S. at 247–48.  A district court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.   Discussion

"[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997).  But before reaching this two-prong inquiry, "[t]he plaintiff's first burden in a premises liability case is to show the premises were defective or hazardous." *Carroll v. Georgia Power Co.*, 240 Ga. App. 442, 443 (1999).

### A.   Defective or Hazardous Premises

Defendant first moves for summary judgment on the grounds Plaintiff has not proven the shelf or grid was defective or hazardous. (Dkt. 88-1 at 8.)  Plaintiff argues "the existence of a hazardous condition is not an independent material element in a premises liability case."

4

(Dkt. 101-1 at 8.)  The Court is puzzled by this assertion—Georgia law is crystal clear on this matter.   Without a hazardous or dangerous condition, there is no premises liability claim. *Id; H.J. Wings & Things v. Goodman*, 320 Ga. App. 54, 55 (2013) ("When the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and there can be no recovery because an essential element of negligence cannot be proven."); *Flagstar Enterprises, Inc. v. Burch*, 267 Ga. App. 856, 856 (2004) ("The threshold point of inquiry in a slip and fall case is the existence of a hazardous condition on the premises.") Here, Plaintiff has provided no evidence of a hazardous condition, and it is not clear whether Plaintiff is alleging that the shelf was defectively manufactured, poorly installed, poorly maintained, overstocked, or something else.  To the extent Plaintiff is alleging a manufacturing defect or overstocking, Plaintiff has provided no evidence of such.  To the extent Plaintiff is alleging negligent installation or maintenance, the undisputed evidence suggests the contrary: Plaintiff admits that the shelf appeared sturdy and that she saw no screws or bolts on the ground after the incident.  (Dkt. 101-6 ¶¶ 17, 26, 29.)  While this evidence does

not preclude that the shelf was poorly installed or maintained, Plaintiff provides no contrary evidence to create a genuine dispute of fact.

The Georgia Court of Appeal's decision in *Warner v. Hobby Lobby Stores*, 321 Ga. App. 121 (2013), is instructive on this matter. In *Warner*, a customer shopping at a Hobby Lobby store removed a whiteboard from a shelf resting inside a set of curved brackets mounted on a peg board. *Id.* at 121. The shelving unit gave in, causing all of the other boards to fall on the customer. *Id.* at 122. Upon inspection, an employee found the brackets had been misaligned, specifically an employee had installed one bracket slightly higher than the other bracket. *Id.* One bracket had also separated and had signs of rust at the joint. *Id.*

The customer sued, arguing Hobby Lobby had actual knowledge of a hazardous condition because its own employees misaligned the brackets upon installation. The trial court granted summary judgment to the defendant, and the Georgia Court of Appeals affirmed, because the customer "failed to show that the misaligned brackets constituted a dangerous condition." *Id.* at 124. The Court explained the customer had offered no evidence that the "slight misalignment" of the bracket caused

6

the bracket to break or the whiteboards to fall on her.  *Id.* The court

further explained

> the mere possibility that the misalignment may have caused
> or contributed to the break is not enough to allow [Plaintiff]
> to survive summary judgment on her claim. When the
> question of whether the allegedly dangerous condition caused
> the plaintiff's injuries remains one of pure speculation or
> conjecture, or the probabilities are at best evenly balanced, it
> becomes the duty of the court to grant summary judgment for
> the defendant.

*Id.*

At least the customer in *Warner* alleged a specific defect—

misaligned shelves.  *Id.*  Here, Plaintiff has not even done that.  She has

not identified anything that caused the metal grid to fall let alone

explained how that "thing" constitutes a defect, which makes summary

judgment even more appropriate than in *Warner*.  But in other respects,

*Warner* is on point: Plaintiff has provided no evidence that any alleged

defect in the shelf caused her injuries.  And "a mere possibility" that a

defect of some nature caused Plaintiff's injuries is insufficient to survive

summary judgment.  *Id.*  On the current evidence, "whether the allegedly

dangerous condition caused the plaintiff's injuries remains one of pure

speculation or conjecture."  *Id.*  *See also Metts v. Wal-Mart Stores, Inc.*,

269 Ga. App. 366, 367 (2004) ("There is no evidence that the display rack

was defective in design or construction. Additionally, there is no evidence that the boxes that hit [Plaintiff] were stacked in a dangerous or hazardous manner.")

Plaintiff further argues "when a shelf that the property owner has a duty to maintain and repair does not function as it is supposed to, there is a presumption that a hazard exists." (Dkt 101-1 at 8.) Plaintiff cites no authority, and the Court is aware of no authority, that supports such a proposition. If anything, such a proposition would contradict clearly established law. *See id.* ("We are unpersuaded by [Plaintiff's] argument that [t]he fact that the shelving units fell and injured [her] indicate that it is a question of fact as to whether Wal–Mart employees negligently placed merchandise on the shelves (…) Again, the fact of an injury occurring, without more, is insufficient to establish liability of the part of Wal–Mart.") To hold otherwise would make a proprietor the guarantor of its customers' safety—a notion antithetical to the well-established requirement that a plaintiff in a slip and fall case must come forward with *evidence* the proprietor had superior knowledge of a dangerous condition that was unknown to her and that caused her injuries.

If Plaintiff suggests that the Court may infer negligence under the doctrine of *res ipsa loquitur*, Plaintiff is also mistaken. *Res ipsa loquitur* is an evidentiary rule that allows a jury, in the absence of proof that a defendant acted negligently, to "infer facts from the circumstances in which the injury occurred, thereby filling the evidentiary gap." *Family Thrift v. Birthrong*, 336 Ga. App. 601, 604-605 (2016). That evidentiary path is only available if a plaintiff first shows "(1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Id*. Even assuming Plaintiff's injury is the type which ordinarily does not occur in the absence of negligence, Plaintiff cannot show the second prong. The doctrine of *res ipsa loquitor* does not apply where there is an intermediary cause that could have produced the injury. This includes—in cases like this—a situation in which other customers had access to the item that caused the injury. So, for example, a customer injured by falling boxes cannot rely upon the doctrine to claim the store negligently stacked the boxes when evidence shows other customers had access to

the boxes (and could have re-arranged them). *See Sams v. Wal-Mart Stores, Inc.*, 228 Ga. App. 314, 314 (1997). It also is not available to a customer injured by the collapse of a chair near a dressing room when other customers had access to the chair (and could have caused it to collapse). *See Fam. Thrift,* 336 Ga. App. at 605. In this case, the defendant did not have exclusive control of the shelf—other customers had access to it and could have caused the metal grid to become loose. So, *res ipsa loquitor* does not apply.[2]

Because Plaintiff has not provided evidence that the shelf constituted a dangerous condition, Defendant is entitled to summary judgment.

---

[2]Further, there is a factual dispute as to the third prong—that is, whether Plaintiff's actions contributed to the incident. (Dkt. 105 ¶ 19.) "The key issue is not whether the evidence raises a question of fact as to res ipsa loquitur, but whether the claimant has established the doctrine's three required elements." *Stern v. Pettis*, 357 Ga. App. 78, 85–86 (2020). This means a plaintiff seeking to invoke *res ipsa loquitor* must show his or her voluntary conduct did not contribute to the incident. And that is a threshold question for the Court to decide. "If the trial court *finds res ipsa loquitur* applicable, 'the case may proceed to the jury, and the sufficiency of the circumstantial evidence, and its consistency or inconsistency with alternative hypotheses, is a question for the jury.'" *Id.* (quoting *Matthews v. Yoplait USA,* 352 Ga. App. 591, 595 (2019)). In this case, the factual dispute about Plaintiff's contribution to the incident prevents her from following the path of *res ipsa loquitor*.

## B.    Constructive Knowledge

Defendant also moves for summary judgment because Plaintiff has not shown constructive knowledge.[3]  "[C]onstructive knowledge may be shown by evidence demonstrating that an employee of the proprietor was in the immediate area of the hazard and could have easily seen it; that the hazard had been present long enough that the proprietor could have discovered it through a reasonable inspection procedure; or that there had been prior incidents, similar to the one that injured the plaintiff, sufficient to provide the proprietor with constructive knowledge of the danger.  *Warner,* 321 Ga. App. at 124–25.  Even if Plaintiff had alleged a hazardous condition, Plaintiff does not show constructive knowledge.

### 1.    Inspection Procedure

"Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure, and in the context of summary judgment the owner must demonstrate its reasonable inspection procedure before the plaintiff is required to show

---

[3] In the Complaint, Plaintiff alleged Defendant had actual knowledge.  As there is no evidence of actual knowledge, and neither party argues it in their briefs, the Court concludes Plaintiff has abandoned that claim and does not discuss it here.

how long the hazard had been present. The owner must show not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." *Gibson v. Halpern Enterprises*, 288 Ga. App. 790, 791–92, (2007).

But in this case, the court need not decide whether there was a reasonable inspection procedure because there is no evidence the shelves alleged defect could have been discovered during a reasonable inspection. *See Chastain v. CF Georgia N. Dekalb L.P.*, 256 Ga. App. 802, 803 (2002) ("If there is no evidence that the water could have been discovered during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect.") Here, Plaintiff admits the alleged defect – whatever it was – was not easily detectable. She admits that the shelf appeared sturdy, and she did not notice anything strange, different, peculiar or "not right" about the shelf or bracket. (Dkt. 101-6 ¶ 17.) As Plaintiff stood before the shelf, looked at it, and pulled the sleeping bag over it, she did not see anything about the bracket or shelf that gave her any hint that there was anything about it that was going to make it fall. (Dkt. 101-6 ¶ 18.) Plaintiff did not see anything that indicated the bracket or shelf was improperly

installed or secured.  (Dkt. 101-6 ¶ 26.)  She saw no screws or bolts on the ground after the incident.  (Dkt. 101-6 ¶ 29.)  One Walmart employee testified that constant inspection of shelves would likely not prevent many shelving accidents because customers move items around so often. (Dkt. 103 at 70.)  Considering the undisputed evidence, the Court cannot conclude that a reasonable inspection procedure would have prevented the accident.[4]  *See id.*; *Rodriquez v. City of Augusta*, 222 Ga. App. 383, 384, (1996) (admission that dangerous substance was not visible precludes finding that City employee could have easily noticed and corrected it).

---

[4] To the extent Plaintiff argues a bump test could have prevented the accident, she presents no evidence of such.  The only evidence on this matter stems from Doug Victer's deposition that a bump test could have possibly prevented the accident. (Dkt. 96 at 200.)  But Victer's statement is solely hypothetical because no one in this litigation has identified the actual cause of the accident.  Victer also testified that a "[b]ump test could have been performed but may not have prevented or allowed [Defendant] to understand the nature of that particular falling product." (Dkt. 96 at 200.)  Because the claim that a bump test may have prevented Plaintiff's injury is purely speculative, it "fails to raise any genuine issue of material fact that would allow her claims to avoid summary judgment." *Garrison v. Sam's E., Inc.*, 2019 WL 2603176, at *4 (S.D. Ala. Apr. 3, 2019), *aff'd*, 787 F. App'x 627 (11th Cir. 2019).

###    2.    Prior Incidents

Plaintiff argues Defendant had constructive knowledge based on 20 prior accidents involving sleeping bag shelves in the last five years.  (Dkt. 101-1 at 17.)  Georgia has little law on constructive knowledge based on prior incidents, but the limited case law involving chain stores suggests they must be from the same store as the plaintiff's incident.  *See Warner*, 321 Ga. App. 121, 125 ("Finally, the evidence showed that there had been no similar incidents in the store prior to [Plaintiff's] injury."); *Armenise v. Adventist Health Sys./Sunbelt, Inc.*, 219 Ga. App. 591, 594 (1995) ("There was no evidence that the grassy area presented any kind of hazard requiring a closer inspection since no one else had tripped or fallen in the area."); *Adamchick v. Cracker Barrel Old Country Store, Inc.*, 281 Ga. App. 677, 678 (2006) ("There also was no evidence of similar prior incidents in the restroom that might have served to put Cracker Barrel on constructive notice of the potential hazard.")  And none of the 20 prior incidents involved the store where Plaintiff's accident occurred.  (Dkt. 101-3.)  But even considering nationwide incidents, the Court finds 20 incidents over 5 years across over 3,800 stores nationwide does not give

rise to constructive knowledge as a matter of maw. Especially considering those 20 incidents include incidents of all causes, including those of customer error or some unidentified cause. (Dkt. 96 at 152-53.) Plaintiff has not presented evidence from which a jury could find constructive knowledge.

## IV.  Conclusion

Defendant is entitled to summary judgment on the premises liability claim (Count I). As "awards of punitive damages and attorney fees are derivative of underlying claims, where those claims fail, claims for punitive damages and attorney fees also fail." *Popham v. Landmark Am. Ins. Co.*, 340 Ga. App. 603, 612 (2017). So, to the extent Plaintiff's claim for punitive damages (Count III) is based on its premises liability claim, Defendant is entitled to summary judgment on that too. The Court thus **GRANTS** Defendant's motion for summary judgment. (Dkt. 88.) But Defendant's motion does not address Plaintiff's negligent hiring and supervision claim (Count II), so the Court does not address that here. If Defendant intended to move for summary judgment on Count II and believes the Court has misconstrued its motion, Defendant is ordered to inform the Court immediately.

The Court **DENIES AS MOOT** Defendant's motion for hearing. (Dkt. 97.)  Count I and Count III (to the extent derivative of Count I) are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 9th day of January, 2023.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE